## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

KENNETH MCCLELLAN,

       Plaintiff,

v.

CHIPPEWA COUNTY, a Municipal
Corporation; JEFFREY ERICKSON;
MICHIGAN STATE POLICE ANALYSTS
JESSINA BECKNER and ANDREA
JOHNSTON, in their individual capacities;
BRUCE GARCHOW, in his individual
capacity; WATCH SYSTEMS, L.L.C.,
a Louisiana Corporation; and
CHARLES MALETTE,
jointly and severally,

       Defendants.

_____/

## COMPLAINT and DEMAND FOR JURY TRIAL

## COMPLAINT AND DEMAND FOR JURY TRIAL

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the Complaint.

*/s/ Trevor B. Garrison*

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which Plaintiff KENNETH

MCCLELLAN (hereafter "Mr. McClellan") seeks relief for injuries stemming from

Defendants' violations of his rights, privileges and immunities secured by the Civil

Rights Act of 1871, 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution and laws of the State of Michigan.

2.      Defendant herein caused Mr. McClellan to be convicted of a crime that, at the time of the conviction, did not exist as applied to him by virtue of a change in Michigan's sex offender registration law. The conviction caused Mr. McClellan to be wrongfully incarcerated for nearly 28 months in the Michigan Department of Corrections.

3.      Defendants Erickson, Garchow, Beckner and Johnston (hereinafter referred to as "Law Enforcement Defendants"), caused Mr. McClellan to be falsely arrested, maliciously prosecuted, convicted and incarcerated, in violation of Plaintiff's constitutional rights.

4.      Municipal Defendant Chippewa County's policies and practices resulted in inadequate training and hiring, affirmatively authorized Defendant Erickson, to falsely arrest and maliciously prosecute Plaintiff Kenneth McClellan, resulting in the violation of Plaintiff's constitutional rights.

5.      Defendant Watch Systems L.L.C., (hereafter "Watch Systems"), a Louisiana Corporation, under contract with the State of Michigan through the Michigan State Police, negligently created, and maintained a faulty sex offender registry database software that resulted in the false arrest and malicious prosecution of Plaintiff Kenneth McClellan.

6.     Defendant Charles Malette (hereinafter "Malette") committed legal malpractice when he failed to advise Plaintiff that it was legally impossible for Plaintiff to be guilty of the alleged charged crimes and failed to inform the court and raise the defense on his behalf.

7.     Plaintiff seeks compensatory and punitive damages, an award of attorneys' fees and costs, and any such additional relief as the Court deems proper.

## JURISDICTION

8.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of Plaintiff's federal constitutional and civil rights.

9.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

10.     Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

3

11.     Plaintiff Kenneth McClellan is a citizen of the United States and, at all times relevant herein, was a resident of Sault Ste Marie, Chippewa County, State of Michigan.

12.     Defendant Chippewa County is a municipal corporation, authorized under and created by the laws of the State of Michigan. It is authorized by law to maintain and operate a Sheriff's Department. Defendant Chippewa County establishes, promulgates, and implements the policies of the Chippewa County Sheriff's Department with regard to its operations, as well as its hiring, training, supervision, and discipline of the employees of said department.

13.     Defendant Erickson was at all times relevant herein employed by Defendant Chippewa County.

14.     At all times relevant herein, Defendant Erickson acted within the scope of his employment with Defendant Chippewa County.

15.     At all times relevant herein, Defendant Erickson acted pursuant to the customs, policies and practices of Defendant Chippewa County.

16.     Defendants Michigan State Police Custodians of the Michigan Sex Offender Registry ("SOR"), Beckner and Johnston ("MSP Defendants"), were at all times relevant herein employed by the Michigan State Police, and were responsible for accurately maintaining the SOR pursuant to Michigan Law, specifically MCL § 28.725.

4

17.    At all times relevant herein, Defendants Beckner and Johnston were employees of the Michigan State Police, acting under color of law and pursuant to its authority.

18.    At all times relevant herein, Defendants Beckner and Johnston acted within the scope of their employment with the Michigan State Police.

19.    Defendant Bruce Garchow was at all times relevant herein employed by the State of Michigan as a probation agent in Chippewa County, Michigan, acting under the color of state law and pursuant to its authority.

20.    At all times relevant herein, Defendant Garchow acted within the scope of his employment with the State of Michigan.

21.    At all times relevant herein, the individual Law Enforcement Defendants named above violated rights of Plaintiff that were clearly established under the Constitution of the United States, in particular under the Fourth and Fourteenth Amendments, and that a reasonable police officer and/or public official, acting under similar circumstances, knew.

22.    Defendant Watch Systems L.L.C. is a private technology vendor corporation, incorporated in the State of, with its offices in Covington, Louisiana, that has contracted with the State of Michigan through the Michigan State Police since at least 2013 to accurately provide and maintain SOR database software, under

color of law, consistent with the duties of the Michigan State Police under MCL § 28.728.

23.     As such, at all times relevant herein, Defendant Watch Systems, paid by the State of Michigan, jointly participated with State and/or local officials under color of law for the purpose of performing the governmental function of creating and maintaining the State of Michigan's SOR, as mandated by the Sex Offender Registration Act, and as a result, Defendant Watch Systems established certain responsibilities on persons, in particular Plaintiff herein, which carried with them the potential for arrest, criminal charges and prosecution.

24.     At all times relevant herein, Defendant Charles Malette was a criminal defense attorney, admitted to practice law in the State of Michigan, with his principal office and conducting business in the city of Sault Ste Marie, Michigan.

25.     Defendant Malette was, at all relevant times, an attorney licensed to practice law in the courts of the State of Michigan.

26.     The actions complained of herein occurred in Chippewa County, and arose, in part, out of Defendant Malette's representation of Plaintiff in Chippewa Circuit Court case number 18-3454-FH, and the damages sustained by the Plaintiff occurred as a result in Chippewa, Jackson and Muskegon Counties in Michigan.

## **FACTS**

27.     In 1996, Mr. McClellan entered a plea of nolo contendere in Oakland

County to a violation of MCL § 750.520(d)(1)(a), third degree criminal sexual conduct ("CSC"), after being accused of an incident that allegedly occurred four years prior in 1992.

28.   As a result of Mr. McClellan's plea, he was required to submit his address twice a year for inclusion on a non-public registry maintained solely for use by law enforcement. Mich. Pub. Act 295, § 10 (1994).

29.   In 1999 the Michigan Legislature introduced a series of amendments to the Sex Offender Registration Act ("SORA") with increased offender restrictions and registration requirements.

30.   In 2011, the SORA was amended to divide registrants into three tiers based on the crime of conviction. Mich. Pub. Acts 17, 18 (2011). Mr. McClellan was subsequently designated as a Tier III offender and required to register for life.

31.   Prior to the 2011 statutory amendment, SORA, MCL § 28.721 *et seq.* only required that Mr. McClellan register his address bi-annually, for 25 years.

32.   The 2011 amendment also required 'immediate' and 'in-person' reporting and verification of additional information including the name and address of Mr. McClellan's employer, the name and address of any school upon enrolling, temporary address, and dates of travel if residing somewhere more than seven days, any electronic email and internet identifiers, and license plate and descriptive information for any vehicle owned or regularly operated. MCL § 28.727 *et seq.*

7

These registration requirements were applied retroactively to individuals whose offense predated the amendment, including Plaintiff.

33.     Whether the 2011 amendment to the SORA applied to Mr. McClellan was an essential element of probable cause for arrest, prosecution, and conviction, should he fail to register his internet identifiers.

34.     On March 31, 2015, Judge Robert Cleland ruled the provision of SORA requiring sex offenders to "report in person and notify the registering authority…immediately after…[t]he individual establishes an electronic mail or instant message address, or any other designations used in internet communications or postings, Mich. Comp. Laws § 28.725(1)(f), is declared unconstitutional and its enforcement enjoined." *Doe v. Snyder*, 101 F.Supp.3d 672, 713 (E.D. Mich. 2015).

35.     Both parties in *Doe v. Snyder* appealed, and the Sixth Circuit Court of Appeals held that the SORA reporting requirements violated *ex post facto* law as applied to individuals like Mr. McClellan whose offense predated the 2011 amendment.

36.     Under the decision in *Doe*, Mr. McClellan, whose offense predated the 2011 amendment to SORA, was no longer required to register or verify his internet identifiers after March 31, 2015.

37.     Under both the current and former versions of the Michigan SORA, MCL §§ 28.275 and 28.728, the Michigan State Police has a duty to accurately

8

maintain the registry and inform registrants of their duties under the law.

38.     Following the decision in *Doe*, the MSP Defendants were obligated to eliminate registration and verification requirements for certain individuals, including Plaintiff, whose offense predated the 2011 amendment.

39.     MSP Defendants Beckner and Johnston did not remove any of the 2011 SORA reporting requirements for Mr. McClellan, nor did they advise law enforcement Defendants herein that Mr. McClellan was not legally, properly, and/or appropriately controlled by the 2011 amendments, and therefore, not responsible for advising law enforcement of his internet identifiers.

40.     On June 30, 2016, the Michigan Court of Appeals in *People v. Solloway* vacated the defendant's conviction for violating two SORA provisions, including the requirement for Defendant to register and verify "all electronic mail addresses and instant message addresses assigned to the individual or routinely used by the individual and all login names and other identifiers used by the individual when using any electronic mail address or instant messaging system," on the grounds that they were unconstitutional, consistent with the analysis in *Doe*. 316 Mich. App. 174 (2016).

41.     On August 31, 2016, the Prosecuting Attorneys Coordinating Council ("PACC"), by and through the Department of Attorney General, informed Chippewa County agents of Judge Cleland's ruling, the Sixth Circuit opinion, and the Michigan

Court of Appeals decision in *People v. Solloway*.

42.     As reflected in the August 31, 2016, letter from PACC that referenced these decisions, it was clearly established that the SORA provision requiring individuals to register and verify their internet identifiers was unconstitutionally vague and violated *ex post facto* law.

43.     Notwithstanding the August 31, 2016, letter from PACC, Defendant Chippewa County maintained a policy and practice of prosecuting all individuals who allegedly violated SORA in failing to register and verify their internet identifiers.

44.     Defendant Chippewa County's policy and practice of ignoring court orders in *Doe v. Snyder* and *People v. Solloway* was the moving force behind Mr. McClellan's unconstitutional arrest, prosecution, conviction, and imprisonment.

45.     From March 2015 through October 2017, Mr. McClellan continued to register and verify under the provisions of the 2011 SORA with his local registering authorities – the MSP Brighton Post – even though he was not required to do so.

46.     By statute, the Michigan Legislature delegated the duty to accurately maintain the Michigan SOR, to the Michigan Department of State Police, pursuant to Section 8 of SORA, MCL § 28.728.

47.     At least as early as 2013, the State of Michigan, through the Michigan Department of State Police, contracted with Defendant Watch Systems to have

Watch Systems provide database software, maintenance, and support for the State's SOR, thereby delegating MSP's duties under MCL § 28.728 to Watch Systems.

48.     While under contract with the State of Michigan, Michigan Department of State Police, Defendant Watch Systems, acting pursuant to its customs, policies, or practices, negligently, grossly negligently and with deliberate indifference, operated the SOR software, such that Plaintiff was never flagged to have the mandate requiring him to register his internet identifiers removed, and in fact remained in the SOR database long after the 2015 decision in *Doe v. Snyder*, which required the Michigan State Police to remove this requirement from the registry.

49.     Defendants Watch Systems, Johnston and Beckner negligently, gross negligently and with deliberate indifference breached their duty under the SORA to Plaintiff, who was never properly flagged to have the internet identifier registration requirement removed from the registry, as required by the 2015 decision in *Doe v. Snyder*.

50.     As a proximate result of Defendants Watch Systems, Johnston and Beckner's failure to properly flag Plaintiff to have the internet identifier registration requirement removed from the registry, Plaintiff was subjected to false arrest and malicious prosecution in violation of his constitutional rights, as enumerated below.

51.     For the years that Defendant Watch Systems had the statutory duty to accurately maintain the Michigan SOR, which included the removal of registration

11

requirements for individuals no longer subject to the restrictions under a change in law, including but not limited to Plaintiff, its custom, practice and policy regarding this duty was deliberately indifferent to the constitutional and statutory rights of Plaintiff, and therefore never properly flagged his internet identifier registration requirement for removal, causing his subsequent constitutional deprivations.

52.    On September 26, 2017, Mr. McClellan was not required to register nor verify his internet identifiers on the SOR as a matter of law.

53.    Nonetheless, on that date, without knowing he was not required to do so, Mr. McClellan reported to the MSP Brighton Post to verify his information on the SOR, including his internet identifiers.

54.    Because Mr. McClellan's registration requirements were incorrectly listed in the SOR, on November 9, 2017, Defendant Erickson from the Chippewa County Sherriff's Department arrested him for violating the SORA by allegedly failing to register a Facebook and Twitter account.

55.    In fact, Mr. McClellan did register his Twitter account and was found not guilty of this charge after trial by jury.

56.    Mr. McClellan spent two nights in the Chippewa County jail before being released on bond.

57.    Concurrently, Law Enforcement Defendants knew of Mr. McClellan's Computerized Criminal History and his SOR profile which included the date of his

1996 CSC conviction, making it obvious that Plaintiff was no longer required to register his internet identifiers under the terms of the 2011 amended SORA.

58.     In August of 2017, Defendant Garchow informed Defendant Erickson that he had received an anonymous tip that Mr. McClellan was using a Facebook account. Shortly thereafter Defendant Garchow informed Defendant Erickson that Mr. McClellan had failed to properly register and verify the account.

59.     On information and belief, and as Defendant Garchow very well knew, there was no anonymous tip, and in fact, Mr. McClellan was not required to register or verify his Facebook account.

60.     Defendant Andrea Johnston, an employee of the Michigan State Police and member of the Internet Crimes Against Children Task Force, verified Plaintiff's identity on the Offender Watch System and falsely confirmed to Defendant Garchow that Mr. McClellan was required to report his internet identifiers, which caused him to be arrested, tried, convicted, and wrongfully incarcerated.

61.     Nonetheless, Defendant Erickson from the Chippewa County Sheriff's Office sent the request to the Chippewa County Prosecutor's Office for a warrant charging Mr. McClellan with violating SORA.

62.     Defendant Erickson based his request on the falsehood that Plaintiff was required to register his internet identifiers under the SORA. Defendant Erickson's request to charge Mr. McClellan with criminal wrongdoing was made

with actual malice and/or in reckless disregard for the truth.

63.     Relying on this false information provided by Defendants Erickson and Johnston, the warrant and arrest of Mr. McClellan was authorized by the Chippewa County Prosecutor's Office on October 30, 2017.

64.     The records provided to the Chippewa County Prosecutor's Office included Mr. McClellan's date of conviction, and the statute under which he had been convicted.

65.     Yet Defendant Johnston, using the vehicle of the SOR records, falsely attested that Plaintiff was required to register his internet identifiers on a semi-annual basis as a Tier III sex offender for the remainder of his natural life.

66.     On October 16, 2018, Defendant Beckner falsely attested to the validity of Plaintiff's purposed "Sex Offender Registration Certified Record," certified evidence that Mr. McClellan was in violation of his reporting obligations, and transmitted those records to the Chippewa County Sheriff's Office pursuant to MCL § 28.201, which caused Plaintiff to be convicted at trial.

67.     In the ensuing 2018 criminal proceedings for the alleged violation of failing to register his internet identifiers under the SORA, Plaintiff was represented and advised by Defendant Charles Malette.

68.     Mr. Malette did not advise Mr. McClellan of the consequences for waiving his preliminary examination, did not file relevant dispositive motions in Mr.

McClellan's criminal proceedings, and did not inform the court that enforcement of MCL § 28.729(1)(a) against Mr. McClellan was prohibited.

69.    On October 24, 2018, Mr. McClellan was tried and convicted of violating the SORA requirements by failing to register his Facebook account pursuant to MCL § 28.729(1)(a), a crime that did not exist under these circumstances and which was impossible for him to have committed.

70.    On November 27, 2018, Mr. McClellan was sentenced to serve three to 15 years in prison and ordered to pay $499 in fines, cost, and restitution.

71.    Mr. McClellan was in fact incarcerated for two years, three months, and 21 days in state prison under the Michigan Department of Corrections.

72.    On March 10, 2021, Plaintiff's appointed counsel from the State Appellate Defender's Office submitted a letter to the Chippewa County Prosecuting Attorney, Robert Stratton III, explaining the circumstances that led to Plaintiff's wrongful conviction and illegal imprisonment.

73.    On March 17, 2021, Chippewa County Circuit Court Judge James Lambros signed a stipulated order vacating Mr. McClellan's 2018 conviction and sentence.

74.    On or around March 18, 2021, the Warden where Plaintiff was incarcerated signed his discharge form and Mr. McClellan was released from prison.

75.    As a direct and proximate result of the foregoing actions, Plaintiff has

suffered the following injuries, among others:

      a.  Seizure and loss of liberty;

      b.  Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

      c.  Loss of, and damage to, his reputation; and

      d.  Loss of earnings.

## FEDERAL CLAIMS

### COUNT I
### 42 U.S.C. § 1983
### FOURTH AMENDMENT – FALSE ARREST
### (LAW ENFORCEMENT DEFENDANTS AND WATCH SYSTEMS)

76.    Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

77.    As described above, Law Enforcement Defendants and Defendant Watch Systems, violated Plaintiff's right to be free from arrest without probable cause, said right being secured by the Fourth Amendment of the United States Constitution.

78.    As a direct and proximate result of the foregoing actions, Plaintiff has suffered the following injuries, among others:

      a.  Seizure and loss of liberty;

16

b.  Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

c.  Loss of, and damage to, his reputation; and

d.  Loss of earnings.

**COUNT II**
**42 U.S.C. § 1983**
**FOURTH AMENDMENT-MALICIOUS PROSECUTION**
**(LAW ENFORECEMENT DEFENDANTS AND WATCH SYSTEMS)**

79.   Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

80.   As described above, Law Enforcement Defendants, and Defendant Watch Systems, violated Plaintiff's right to be free from criminal prosecution without probable case, said right being secured by the Fourth Amendment of the United States Constitution.

81.   Law Enforcement Defendants, and Defendant Watch Systems initiated, through the use of falsehood, the aforementioned criminal prosecution of Plaintiff without probable cause.

82.   As a consequence of the criminal prosecution initiated by Defendants, Plaintiff suffered an unreasonable and unconstitutional seizure and deprivation of liberty and damages for confinement.

83.   The aforementioned criminal proceedings were resolved in Plaintiff's

17

favor; the convictions were vacated.

84.     As a direct and proximate result of the foregoing actions, Plaintiff has

suffered the following injuries, among others:

a.  Seizure and loss of liberty;

b.  Degradation, humiliation, mental anguish, emotional suffering, and
    embarrassment and other psychological and emotional injuries, past
    and future;

c.  Loss of, and damage to, his reputation; and

d.  Loss of earnings.

**COUNT III**
**42 U.S.C. § 1983**
*MONELL* **CLAIM**
**(MUNICIPAL DEFENDANT AND WATCH SYSTEMS)**

85.     Plaintiff hereby re-alleges and incorporates by reference all of the

paragraphs above as if fully set forth herein word for word.

86.     At all times herein, Defendant Chippewa County through its

supervisors and/or policymakers, established and/or maintained the following

policies and/or practices:

a.  Failure to train, supervise, and/or discipline police officers,
    including but not limited to Defendant Erickson with regard to when
    it was proper to issue warrant requests and to arrest for SORA
    violations, knowing that:

    i.  These officers were ill trained and supervised as to when
        arrests and criminal prosecutions were appropriate under
        SORA and when they were not; and

18

ii.  This lack of training and supervision would likely result in unreasonable and unlawful arrests and criminal prosecutions.

b.  Failure to train, supervise, and/or discipline police officers, including but not limited to Defendant Erickson, when the Defendants Chippewa County and Watch Systems knew, or had actual notice, that officers such as Defendant Erickson were likely to engage in arrests and initiate prosecutions for alleged SORA violations, when said officers lacked adequate understanding or appreciation of the SORA and related laws that they were enforcing.

87.    At all times relevant herein, Defendant Watch Systems, through its owners, supervisors and operators, established and/or maintained the following policies and/or practices:

a.  Failure to provide and/or maintain the statutorily mandated software programs to reflect the 2015 change in law, which would have required Plaintiff and all those similarly situated to have their internet identifier registry requirement removed, when it was on actual notice that officers relying on the registry software would undertake and engage in arrests and initiate prosecutions under provisions of SORA, when the officers were likely to target persons for such arrests and prosecutions who were legally ineligible for such actions;

b.  Failure to promulgate adequate training materials sufficient to ensure that law enforcement officers, including but not limited to the Law Enforcement Defendants, when Watch Systems knew, or had actual notice, that said officers would undertake and engage in arrests and initiate prosecutions that lacked probable cause, in reliance on the information obtained through Defendant Watch Systems registry software; and

c.  Failure to properly monitor changes in federal and state law and to modify its software program to reflect such changes.

19

88.     Each of the aforementioned policies and/or practices, i.e., the failure to train, supervise, and/or discipline the individual Defendants, was known to Defendants Chippewa County and Watch Systems, as being highly likely and probable to cause violations of the constitutional rights of members of the public, including but not limited to Plaintiff herein.

89.     Defendants Chippewa County and Watch Systems were deliberately indifferent to the obvious risk that such policies and practices would lead to constitutional violations such as those alleged herein.

90.     Each such custom, policy and/or practice was a moving force in the violations of Plaintiff's constitutional rights, as set forth herein.

91.     As a direct and proximate result of Defendants Chippewa County and Watch System's policies and/or practices – which were a moving force in the violations of Plaintiff's constitutional rights, as set forth in Counts I-II above – Plaintiff Kenneth McClellan has suffered the following injuries, among others:

      a.  Seizure and loss of liberty;

      b.  Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

      c.  Loss of, and damage to, his reputation; and

      d.  Loss of earnings.

20

## STATE LAW CLAIMS

## COUNT IV
## STATE LAW NEGLIGENCE
## (DEFENDANT WATCH SYSTEMS)

92.     Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

93.     The State of Michigan, Michigan Department of State Police, contracted with and delegated its statutory duty under MCL § 28.728 to provide and maintain an accurate SOR, including flagging and removing the requirement for individuals who were no longer required to register and/or verify their internet identifiers, to Defendant Watch Systems.

94.     Watch Systems had a statutory duty to create its software such that it maintained the SOR in a manner consistent with Michigan law.

95.     Watch Systems had a duty to create software that, had it not been negligently created, would have removed and/or properly flagged Plaintiff for removal of the internet identifier registry requirement, as required by the decision in *Doe v. Snyder*.

96.     Watch Systems breached that duty by negligently creating, deploying, and maintaining software for the administration of the Michigan SOR that failed to flag or remove the requirement to register and verify internet identifiers for

21

individuals like Mr. McClellan who were no longer required to register their identifiers under the SORA.

97.     Watch Systems did not provide adequate software and/or did not adequately maintain its software to comply with changes in federal and state law.

98.     As a proximate result of Watch Systems' failure to appropriately act, Plaintiff was never properly flagged nor had the internet identifier reporting requirement removed from the SOR, resulting in his wrongful arrest, prosecution, conviction, and extended incarceration for failure to register his Facebook account, when in fact, he was not legally required to do so.

99.     The negligent acts of creating, deploying, and maintaining faulty software to the State of Michigan that did not meet the statutory duty delegated to Watch Systems, *vis-á-vis* their contract with the State of Michigan, Michigan Department of State Police, was a proximate cause of Plaintiff's damages and he has suffered the following injuries, among others:

    a.  Seizure and loss of liberty;

    b.  Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

    c.  Loss of, and damage to, his reputation; and

    d.  Loss of earnings.

**COUNT V**
**STATE LAW**
**LEGAL MALPRACTICE**
**(CHARLES MALETTE)**

100.   Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

101.   The elements of legal malpractice are: 1) attorney-client relation; 2) negligence or breach of the standard of care; 3) proximate causation of; 4) damages.

102.   Mr. McClellan retained Defendant Charles Malette to represent him in case number 18-3454-FH.

103.   Once a lawyer accepts a retainer to represent a client, they are obligated to exert their best efforts wholeheartedly to advance the client's legitimate efforts. *See,* Legal Ethics, Model Rule 1.1 and *In re: Daggs*, 384 Mich. 729 (1971). A lawyer has a duty of competence. MRCP 1.1.

104.   An attorney owes a client a duty of care – an obligation to use reasonable care, skill, discretion, and judgment. *Lipton v. Boesky*, 110 Mich. App. 589, 594 (1981); *Peterson v. Simasko, Simasko & Simasko, P.C.*, 228 Mich. App. 707, 708 (1998).

105.   An attorney thereby assumes the position of highest trust and confidence. *Hart v. Comerica Bank*, 957 F. Supp. 958, 981 (E.D. Mich. 1997).

106.   An attorney who practices criminal law must know the jurisdiction's

23

pertinent statutes and the common law.

107.   An attorney has a duty to keep a client reasonably informed regarding the representation, and the duty to explain a matter to the extent reasonably necessary for the client to make an informed decision. MRCP 1.4.

108.   Defendant Malette materially breached each of his duties by:

    a.  Failing to ascertain that the felonies for which Plaintiff was charged did not exist for Plaintiff and it was legally impossible for him to have committed this crime; and

    b.  Failing to bring the facts asserted in paragraphs 34 through 36, and 40 above to the attention of the court and moving to dismiss, as a result.

109.   Causation may be established as a matter of law where the absence of professional care is so manifest that within the common knowledge and experience of an ordinary layman it can be said that the defendant was careless.  *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 174 Mich. App. 14, 48 (1989).

110.   In this case it is certainly "more likely than not" that "but for" Defendant Malette's negligence, "Plaintiff's injuries would not have occurred." *Pontiac School District v. Miller, Canfield, Paddock & Stone*, 221 Mich. App. 602, 614 (1997).

111.   Defendant Malette's negligence was the direct and foreseeable cause of the damages set forth below.

112.   An attorney is liable for all damages proximately caused by the

wrongful act. *Basic Food Industries v. Grant*, 107 Mich. App. 685, 693 (1981) *lv. den*. 413 Mich. 913 (1982); 3 Mallen & Smith Legal Malpractice § 21:4.

113. As a direct and proximate result of the negligence and malpractice of Defendant Malette, Plaintiff has suffered the following direct injuries, among others:

      a. Seizure and loss of liberty;

      b. Loss of, and damage to, his reputation; and

      c. Loss of earnings.

114. Under the appropriate circumstances, such as here, a client is entitled to recover mental anguish and emotional damages. *Gore v. Rains & Block*, 189 Mich. 729 (1991). The series of events have caused Plaintiff extreme mental anguish due to his unlawful incarceration and he has experienced extreme emotional suffering and embarrassment and other psychological and emotional injuries, past and future.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff, Kenneth McClellan, demands the following relief, jointly and severally against all Defendants, for the violations of his rights as set forth in the Counts I through V herein:

    (a) Compensatory damages for the emotional and economic injuries suffered by Plaintiff as a result of Defendants' unlawful, unconstitutional and unjustified conduct, in an amount determined by a jury to be fair, just, and reasonable and in conformity with the evidence at trial;

    (b) Punitive and/or exemplary damages against the individual Defendants to the extent allowable by law;

(c)   Attorney's fees, as allowed, pursuant to 42 U.S.C § 1988;

(d)   The costs, interest, and disbursements of this action; and

(e)   Such other and further relief as appears just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff in the above-entitled action demands a trial by jury on all issues so triable in his Complaint.

Respectfully submitted,

**GARRISON LAW, PC**

Dated: December 10, 2021            By: <u>/s/ *Trevor B. Garrison*</u>
TREVOR B. GARRISON (P69255)
Attorneys for Plaintiff
1523 N. Main Street
Royal Oak, MI 48067
(248) 847-1000
tgarrison@garrison-law.com

26