UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH MCCLELLAN,

      Plaintiff,

                                Case No. 2:21-cv-246

v.

                                Hon. Hala Y. Jarbou

COUNTY OF CHIPPEWA, et al.,

      Defendants.

_____/

## OPINION

Plaintiff Kenneth McClellan initiated this case against Defendants Chippewa County, Jeffrey Erickson, Jessica Beckner, Andrea Johnston, Bruce Garchow, Watch Systems, LLC, and Charles Malette, seeking to recover damages stemming from his arrest and prosecution for violation of Michigan's Sex Offender Registration Act ("SORA"). Pending before the Court are five motions to dismiss Plaintiff's Complaint, separately filed by Defendants as follows: Defendants Bruce Garchow and Andrea Johnston ("MDOC Defendants") (ECF No. 23); Chippewa County and Jeffrey Erickson ("County Defendants") (ECF No. 24); Jessica Beckner (ECF No. 28); and Defendant Watch Systems, LLC (First Mot. to Dismiss, ECF No. 30; Second Mot. to Dismiss, ECF No. 40). Plaintiff filed a response in opposition to each motion, and Defendants have filed replies. For the reasons that follow, the Court will dismiss Plaintiff's federal claims and decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

Also pending before the Court is Plaintiff's motion for leave to file an amended complaint (ECF No. 46). The Court ordered Defendants to respond to that motion on an expedited basis, and

most Defendants have done so.[1]  As discussed below, the Court will deny Plaintiff's motion for leave to amend.

## I.  BACKGROUND

### A.  Factual Background

This action arises from Plaintiff's November 2017 arrest and subsequent conviction in Michigan state court for failing to comply with the SORA.  Plaintiff was arrested in November 2017 for allegedly failing to report Twitter and Facebook accounts.  (Compl. ¶ 54, ECF No. 1.) He was then convicted of failing to report the Facebook account under Mich. Comp. Laws § 28.725(1)(f) (2011), which required individuals on the sex offender registry to "report in person and notify the registering authority . . . immediately after . . . establish[ing] any electronic mail or instant message address, or any other designations used in Internet communications or postings." *Id.*; *see People v. McClellan*, No. 346885, slip op. at 2-3 (Mich. Ct. App. Apr. 9, 2020) (examining Plaintiff's conviction under Mich. Comp. Laws § 28.725(1)(f)).[2]  This conviction caused Plaintiff to be incarcerated for nearly 28 months with the Michigan Department of Corrections ("MDOC"). (Compl. ¶ 2.)  Plaintiff claims that Defendants "caused [him] to be convicted of a crime that, at the time of the conviction, did not exist as applied to him by virtue of a change in Michigan's sex offender registration law."  (*Id.*)

### 1.    The Parties

Plaintiff Kenneth McClellan is a resident of Sault Ste Marie, Chippewa County, Michigan. (*Id.* ¶ 11.)  Plaintiff alleges that Defendant Chippewa County maintains and operates a Sheriff's Department, and "establishes, promulgates, and implements the policies of the Chippewa County

---

[1] Defendant Malette, who defaulted, has not responded.
[2] Plaintiff was found not guilty of failing to report the Twitter account.  (Compl. ¶ 55; 10/24/2018 Trial Tr. 200, ECF No. 23-12.)

Sheriff's Department with regard to its operations, as well as its hiring, training, supervision, and discipline" of the Department's employees.  (*Id.* ¶ 12.)  Defendant Erickson was employed by the Chippewa County Sheriff's Department.  (*Id.* ¶¶ 13-14, 54.)  Defendant Beckner was employed by the Michigan State Police ("MSP").  (*Id.* ¶ 16.)  Defendants Garchow and Johnston were employed as probation agents for the MDOC in Chippewa County.  (*Id.* ¶ 19.)[3]  Defendant Watch Systems is a private technology vendor corporation that contracted with the MSP "to accurately provide and maintain [sex offender registration] database software."  (*Id.* ¶¶ 5, 22.)  Defendant Malette was Plaintiff's criminal defense attorney.  (*Id.* ¶ 24.)

**2.      Plaintiff's CSC Conviction and Initial SORA Registration**

In 1992, Plaintiff was accused of third degree criminal sexual conduct ("CSC"), in violation of Mich. Comp. Laws § 750.520(d)(1)(a). (Compl. ¶ 27.)  Four years later, in 1996, Plaintiff "entered a plea of nolo contendere" in Oakland County.  (*Id.*)  Plaintiff's plea resulted in his "inclusion on a non-public registry maintained solely for use by law enforcement," and required him to "submit his address twice a year" for 25 years.  (*Id.* ¶¶ 28, 31 (citing Mich. Pub. Acts 295, § 10 (1994).)

**3.      SORA**

The SORA was enacted in 1994.  In 1999, the Michigan Legislature introduced a series of amendments to the SORA, including increased offender restrictions and registration requirements. *See* Mich. Pub. Act 85 §§ 5a(4), 8(2), 10(2)(3) (1999).  In 2006, the SORA was amended to prohibit registrants from living, working, or loitering within 1,000 feet of school property—an area referred to as Student Safety Zones.  *See* Mich. Pub. Acts 121, 127 (2005).

---

[3] Plaintiff alleges that Defendant Johnston was employed by the Michigan State Police, however, Defendant Johnston represents that she was a MDOC probation officer assigned to work with the Michigan State Police Internet Crimes Against Children Task Force. (*See* Def. Erickson's Mot. to Dismiss 6 n.6, ECF No. 23.)

The SORA was amended again in 2011 to divide registrants into three tiers based on the crime of conviction.  Mich. Pub. Acts 17, 18 (2011).  Following the 2011 amendments, Plaintiff was designated as a Tier III offender and required to register for life.  These amendments also included the requirement in Mich. Comp. Laws § 28.725(1)(f) that Plaintiff immediately report new internet identifiers.  The 2011 version of the SORA applied retroactively to Plaintiff, even though he committed his CSC offense before 2011.

4.      **Challenges to 2006 and 2011 Amendments to the SORA**

After 2011, there were a number of challenges to the 2006 and 2011 amendments.  Some of the challengers contended that applying those amendments to those who committed sex offenses before the amendments took effect was a violation of the ex post facto prohibitions of the U.S. and Michigan constitutions.   The Michigan Court of Appeals rejected those claims on several occasions, concluding that the registration and reporting requirements in the SORA were not punishment.[4]  *See, e.g.*, *People v. Snyder*, No. 325449, 2016 WL 683206, at *3 (Mich. Ct. App. Feb. 18, 2016); *People v. Tucker*, 879 N.W.2d 906, 926 (Mich. Ct. App. 2015); *People v. Temelkoski*, 859 N.W.2d 743, 760-61 (Mich. Ct. App. 2014).

One such challenger, Paul Betts, was ultimately successful.  In 2012, he was convicted in a Michigan court of failing to comply with the SORA's requirement to report his change of e-mail address.  *See People v. Betts*, 968 N.W.2d 497, 536 (Mich. 2021).  He had been placed on the sex offender registry due to a 1993 conviction for CSC.  *Id.*  He appealed his SORA conviction, arguing that the law's application to him violated constitutional prohibitions on ex post facto laws.  *Id.* at 537.  In 2014, the Michigan Court of Appeals denied his request for leave to appeal his conviction

---

[4] Generally, a law that is not punitive in purpose or effect does not violate the Ex Post Facto Clause.  *See Smith v. Doe*, 538 U.S. 84, 92-95 (2003).

4

due to lack of merit.  *Id.*  He then appealed that decision to the Michigan Supreme Court, which held the appeal in abeyance for several years.  *Id.*

Meanwhile, in federal court, several plaintiffs filed suit in the Eastern District of Michigan, challenging the validity of the 2006 and 2011 amendments to the SORA on several constitutional grounds.  In 2015, the district court concluded that the SORA's requirement in Mich. Comp. Laws § 28.725(1)(f) to report internet identifiers in person violated the First Amendment because it unnecessarily burdened free speech.  *Does #1-5 v. Snyder*, 101 F. Supp. 3d 672, 704 (E.D. Mich. 2015) ("*Does I*").  Consequently, it enjoined enforcement of that provision, among others.  *Id.* at 713.  The plaintiffs in that case also contended that applying the 2006 and 2011 amendments to them violated the Ex Post Facto Clause of the U.S. Constitution, but the court concluded that it lacked jurisdiction to decide that issue.  *Id.*  The parties appealed that decision.

On August 25, 2016, the Court of Appeals for the Sixth Circuit reversed the decision in *Does I* and held that the SORA's reporting requirements and its restrictions on where offenders can live and work violated the Ex Post Facto Clause when applied to individuals whose offenses predated the 2006 and 2011 amendments.  *See Does #1-5 v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016) ("*Does II*").  The Sixth Circuit remanded the case for entry of a judgment consistent with its opinion.  *Id.*  The Court of Appeals did not address the First Amendment issue because anything it would say on that matter would be dicta.  *Id.*  The parties appealed the Sixth Circuit's decision. The Supreme Court denied a petition for a writ of certiorari on October 7, 2017.  *See Snyder v. Does #1-5*, 138 S. Ct. 55 (2017).

Although not relevant here, Plaintiff mentions *People v. Solloway*, 891 N.W.2d 255 (Mich. Ct. App. 2016), in which the Michigan Court of Appeals vacated an individual's conviction for violating the SORA's requirement to register internet identifiers "routinely used" by the offender,

*see* Mich. Comp. Laws § 28.727(1)(h) and (i) (2011), because those provisions were unconstitutionally vague. *Solloway*, 891 N.W.2d at 265. That case is not relevant because the provision used to convict Plaintiff did not contain the "routinely used" language that the court in *Solloway* found problematic.

Back in federal court, on January 26, 2018, in accordance with the Sixth Circuit's decision in *Does II*, the district court entered a stipulated judgment declaring that retroactive application of the 2006 and 2011 amendments to the SORA was unconstitutional because it violated the Ex Post Facto Clause of the U.S. Constitution. *See Does #1-5 v. Snyder*, 449 F. Supp. 3d 719, 724-25 (E.D. Mich. 2020) ("*Does III*"). The other constitutional challenges still remained unresolved, however. On February 14, 2020, when discussing the Sixth Circuit's opinion in *Does II*, the district court concluded that the Sixth Circuit had "relegated to dicta" the district court's prior decision that the requirement to report internet identifiers violated the First Amendment because the Sixth Circuit did not address that issue. *Id.* at 724. Consequently, on that date, the district court affirmed its prior ruling on that issue in *Does I* and entered a judgment declaring null and void the requirement in Mich. Comp. Laws § 28.725(1)(f) to report internet identifiers because that provision violated the First Amendment. *Id.* at 735-38.

In December 2020, the Michigan legislature amended the SORA and removed the reporting provision used to convict Plaintiff, along with other requirements and restrictions. The amended law went into effect on March 24, 2021.

Finally, in July 2021, the Michigan Supreme Court vacated Betts's conviction under the SORA after concluding that applying the 2011 amendments to criminal acts that predated those amendments violated the constitutional prohibition on ex post facto laws. *Betts*, 968 N.W.2d at 521.

6

5.      **Plaintiff's 2017 Arrest and 2018 Conviction**

Plaintiff alleges that he reported to the MSP Brighton Post on September 26, 2017.  He alleges that Defendants Erickson, Garchow, Beckner, and Johnston "knew of [his] Computerized Criminal History and his SOR profile which included the date of his 1996 CSC conviction, making it obvious that Plaintiff was no longer required to register his internet identifiers under the terms of the 2011 amended SORA." (Compl. ¶ 57.)  Nevertheless, in August 2017, Garchow allegedly told Erickson that he "had received an anonymous tip that [Plaintiff] was using a Facebook account" and that Plaintiff "had failed to properly register and verify the account."  (*Id.* ¶ 58.) Plaintiff alleges that Johnston verified Plaintiff's identity on the Offender Watch System and "falsely confirmed" to Garchow that Plaintiff was required to report his internet identifiers.  (*Id.* ¶ 60.) Erickson allegedly sent a request to the Chippewa County Prosecutor's Office for a warrant charging Plaintiff with violating the SORA for failing to report Facebook and Twitter accounts. (*Id.* ¶¶ 54, 61-62.)  The Chippewa County Prosecutor's Office authorized the warrant on October 30, 2017.  (*Id.* ¶ 63.)

Defendant Erickson arrested Plaintiff pursuant to the warrant on November 9, 2017.  (*Id.* ¶ 54.)  Plaintiff spent two nights in the Chippewa County jail before being released on bond.  (*Id.* ¶ 56.)

On October 16, 2018, Defendant Beckner allegedly "falsely attested" to the "validity of Plaintiff's 'Sex Offender Registration Certified Record,'" which was used as "evidence that [Plaintiff] was in violation of his reporting obligations[.]"  (*Id.* ¶ 66.)  Beckner then "transmitted those records" to the Chippewa County Sheriff's Office.  (*Id.*)

On October 24, 2018, a jury convicted Plaintiff of violating the SORA by failing to report his Facebook account.  (*See id.* ¶ 69.)  Plaintiff was represented by Defendant Malette during those

proceedings.   (*Id.* ¶ 67.)   Plaintiff alleges that Malette "did not advise [Plaintiff] . . . that enforcement of [the SORA] against [Plaintiff] was prohibited." (*Id.* ¶ 68.)

On November 27, 2018, Plaintiff was sentenced to serve 3 to 15 years in prison and ordered to pay $499 in fines, cost, and restitution.   (*Id.* ¶ 70.)   Plaintiff was then incarcerated with the MDOC for "two years, three months, and 21 days." (*Id.* ¶ 71.)

On March 10, 2021, Plaintiff's appointed counsel from the State Appellate Defender's Office submitted a letter to the Chippewa County Prosecuting Attorney explaining the circumstances that led to Plaintiff's conviction and imprisonment.  (*Id.* ¶ 72.)  On March 17, 2021, Chippewa County Circuit Court Judge James Lambros signed a stipulated order vacating Plaintiff's 2018 conviction and sentence.  (*Id.* ¶ 73.)  Plaintiff was released from prison on or around March 18, 2021.  (*Id.* ¶ 74.)

Plaintiff contends that he was no longer required to register or verify his internet identifiers after March 31, 2015, the date of the district court's decision in *Does I*, because his CSC offense predated the 2011 amendment.  Plaintiff also contends that, "[u]nder both the current and former versions of the Michigan SORA," MSP had a duty to accurately maintain the registry and "inform registrants of their duties under the law."  (*Id.* ¶¶ 36-37.)  He contends that, following *Does I*, the MSP Defendants were obligated to cease enforcement of the reporting requirements for individuals like Plaintiff whose offenses predated the 2011 amendments.  According to Plaintiff, Defendants Beckner and Johnston "did not remove any of the 2011 SORA reporting requirements" for Plaintiff, "nor did they advise law enforcement Defendants . . . that [Plaintiff] was not legally, properly, and/or appropriately controlled by the 2011 amendments, and therefore, not responsible for advising law enforcement of his internet identifiers."  (*Id.* ¶ 39.)

Plaintiff further alleges that, on August 31, 2016, the Prosecuting Attorneys Coordinating Council ("PACC"), by and through the Department of Attorney General, informed Chippewa County "agents" of the ruling in *Does I*, the Sixth Circuit opinion in *Does II*, and the Michigan Court of Appeals decision in *Solloway*. (Compl. ¶ 41.) Plaintiff also states that, because the August 2016 letter from the PACC referenced these decisions, it was clearly established that the SORA provision requiring individuals to report their internet identifiers was unconstitutionally vague and violated prohibitions on ex post facto laws. (*Id.* ¶ 42.) Plaintiff alleges that Chippewa County nonetheless maintained "a policy and practice of prosecuting all individuals who allegedly violated [the] SORA in failing to register and verify their internet identifiers" and "ignoring court orders in *Does v. Snyder* and *People v. Solloway*." (*Id.* ¶¶ 43-44.) Plaintiff asserts that this policy "was the moving force behind [Plaintiff]'s unconstitutional arrest, prosecution, conviction, and imprisonment." (*Id.* ¶ 44.)

Plaintiff alleges that he continued to register his information with the MSP Brighton Post, his local registering authority, "even though he was not required to do so," from March 2015 through October 2017. (*Id.* ¶ 45.) Plaintiff also alleges that the MSP and Defendant Watch Systems, under contract with the MSP, operated the SOR software "negligently, grossly negligently and with deliberate indifference," "such that Plaintiff was never flagged to have the mandate requiring him to register his internet identifiers removed, and in fact remained in the SOR database long after the 2015 decision in [*Does I*], which required the [MSP] to remove this requirement from the registry." (*Id.* ¶¶ 46-48.)

### B. Procedural History

Plaintiff asserts the following claims against Defendants under 42 U.S.C. § 1983:

I.   Fourth Amendment – False Arrest (against the Individual Defendants and Watch Systems)

II.     Fourth Amendment – Malicious Prosecution (against the Individual Defendants and
        Watch Systems)
III.    *Monell* Claim (against Chippewa County and Watch Systems)

(Compl., PageID.16-20.)  Plaintiff also asserts the following claims under state law:

IV.     Negligence under MICH. COMP. LAWS § 28.728 (against Watch Systems)
V.      Legal Malpractice (against Defendant Malette)

(*Id.*, PageID.21-25.)

On February 4, 2022, default was entered by the Clerk of Court against Defendant Malette
for failure to plead or otherwise defend the action under Federal Rule of Civil Procedure 55(a).
(Default, ECF No. 21.)  On February 7, 2022, the other defendants filed motions to dismiss.  On
September 23, 2022, Plaintiff filed a motion for leave to file an amended complaint.  On September
27, 2022, Judge Jane Beckering recused herself from this matter and the Clerk of Court reassigned
this case to the undersigned.

## II.  ANALYSIS

### A.  Dismissal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a claim for relief in
any pleading if the claim "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ.
P. 12(b)(6).  To survive a motion to dismiss, a complaint must present "enough facts to state a
claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570
(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Although the plausibility standard is not equivalent
to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has
acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded
facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss for failure to state a claim, the Court generally does not consider matters outside the pleadings unless the Court treats the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). On the other hand, the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Id.*

## B. Discussion

The Individual Defendants (Johnston, Garchow, Erickson, and Beckner) each argue, among other things, that Plaintiff's false arrest claim under the Fourth Amendment (Count I) is barred by the applicable statute of limitations, that Plaintiff's Malicious Prosecution claim (Count II) fails to state a claim for relief, and that the Individual Defendants are entitled to qualified

immunity on both Counts I and II.  Defendant Chippewa County separately argues that Plaintiff's *Monell* claim against it fails to state a claim for relief.  Last, Defendant Watch Systems argues that it is entitled to immunity under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940) or the Communications Decency Act (CDA), 47 U.S.C. § 230(C)(1), and that Plaintiff has failed to state any claim against it.

For the reasons that follow, the Court will dismiss Count I because it is time barred.  The Court will dismiss Count II against the Individual Defendants and Watch Systems because the Individual Defendants are entitled to qualified immunity and because Plaintiff does not state a malicious prosecution claim against Watch Systems.  The Court will dismiss Count III against Chippewa County and Watch Systems for failure to state a claim.  The Court will decline to exercise supplemental jurisdiction over the remaining claims, which arise under state law.

1. <u>**Count I – False Arrest (Individual Defendants and Watch Systems)**</u>

    a. *Statute of Limitations*

Defendants argue that Plaintiff's false arrest claim is barred by the applicable statute of limitations.  "In § 1983 actions, federal courts borrow state statutes of limitations to determine the applicable time period in which a plaintiff may bring a claim."  *Green v. City of Southfield*, 759 F. App'x 410, 414 (6th Cir. 2018).  "Section 1983 claims in Michigan must be raised within the three-year limitations period applicable to personal-injury suits."  *Syzak v. Dammon*, No. 15-2468, 2017 WL 5712670, at *2 (6th Cir. Feb. 17, 2017) (citing *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986)).

"'Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run.'"  *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.

1984)).  The statute of limitations for § 1983 false arrest claims, "where the arrest is followed by criminal proceedings, begins to run at the time the [plaintiff] becomes detained pursuant to legal process." *Wallace v. Kato,* 549 U.S. 384, 397 (2007).

Here, Defendants argue that, under *Wallace*, the statute of limitations for Plaintiff's false arrest claim began to run in November 2017, when Plaintiff was arrested and arraigned pursuant to the warrant at issue.  Defendants note that Plaintiff's complaint, filed on December 10, 2021, was filed more than three years later.

Plaintiff responds that:  (1) his claim is not time-barred because it accrued when he had reason to know of the injury, not when he was arrested or arraigned; and (2) even if his claim accrued three years prior to his filing the complaint, equitable tolling should apply.

Plaintiff argues that, under *Sevier*, a cause of action begins to accrue when "the plaintiff knows or has reason to know of the injury which is the basis of [the] action." *Sevier*, 742 F.2d at 272-73.  Plaintiff asserts that "[a] plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *See id.* at 273.  Plaintiff argues that "[i]n determining when the cause of action accrues in section 1983 actions, [the Sixth Circuit looks] to what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991).  Plaintiff further argues that *Wallace* does not "weaken" *Sevier*'s impact under the present facts, because Plaintiff's false arrest claim could not have accrued before he received notice that he had been injured, which is, at the very earliest, on February 14, 2020, when the *Does III* decision held that the 2006 and 2011 amendments to the SORA were unconstitutional.  (Pl.'s Resp. to Mot. to Dismiss 5-7, ECF No. 32.)  Plaintiff asserts that because he initiated the instant action within two years of February 14, 2020, his false arrest claim is not barred.  (*Id.*)  Plaintiff's argument lacks merit.

According to Plaintiff's complaint, he was arrested on a warrant on November 9, 2017. Under *Wallace*, Plaintiff's claim for false arrest accrued when lawful process attached later that month. Plaintiff fails to cite authority that compels a different conclusion. In fact, the Sixth Circuit recently declined to address the conflict between the "standard" accrual rule and the discovery rule in the § 1983 false arrest and false imprisonment context, because the date the plaintiff's claim accrued under *Wallace* and the date the plaintiff knew of his wrongful arrest in that action fell on the same date. *See Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162-63 (6th Cir. 2021). The Sixth Circuit applied *Wallace*'s accrual rule, stating:

> . . . Dibrell's claim is identical to the claim that *Wallace* found untimely. The plaintiff in that case, Andre Wallace, had been convicted, and an appellate court had vacated his conviction. He brought a § 1983 claim for an alleged false arrest and imprisonment under the Fourth Amendment. The Court rejected his contention that this claim accrued on his release date. Instead, the claim accrued "much earlier, when legal process was initiated against him[.]" And we cannot accept for Dibrell what the Supreme Court rejected for Wallace.

*Id.* (citations omitted).

Even if the Court were to conclude that the discovery rule applied here, it would not save his claim. Plaintiff asserts that he only received notice, and thus knew of his injury, on February 14, 2020, when the *Does III* decision issued. However, the issue is whether Plaintiff was aware of "the fact of his injury and its cause." *Snyder-Hill v. Ohio State Univ.*, Nos. 21-3981/3991, 2022 WL 4233750, at *10 (6th Cir. Sept. 14, 2022) (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Plaintiff had that knowledge when he was arrested. His "ignorance of his legal rights" does not affect the accrual date for his claim. *See id.*

Accordingly, Plaintiff's false arrest claim accrued on the date that legal process attached, which was in November 2017, more than three years before he filed his complaint. Absent tolling, his claim is untimely.

### b. *Equitable Tolling*

Plaintiff argues that equitable tolling should apply.  He contends that the "short delay" in filing his complaint resulted from "a legitimate confusion about the state of the law as to when his claim accrued . . . created by the courts themselves and did not result from [Plaintiff's] failure to diligently pursue his claim."  (Pl.'s Resp. 6, ECF No. 32.)  Plaintiff argues that, unlike the plaintiff in *Wallace*, he was not aware that the crime charged "did not exist" as applied to him.  (*Id.* at 7.)  Instead, Plaintiff asserts that he filed his complaint less than one year after his conviction was vacated, before either Plaintiff or the parties to his criminal proceedings were aware of his "ongoing harm."  (*Id.*)

In § 1983 actions, "[j]ust as limitations periods are taken from state law, so are the rules regarding tolling."  *Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 883 (E.D. Mich. 2013) (citing *Wallace*, 549 U.S. at 394 ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitation.")); *accord Roberson v. Macnicol*, 698 F. App'x 248, 250 (6th Cir. 2017).  In Michigan, equitable tolling of statutes of limitations applies in limited circumstances, including when the courts have created confusion through a "preexisting jumble of convoluted caselaw" whether a particular claim arises under different statutes of limitations, *see Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 679-80 (Mich. 2007) (quoting *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 556 n.65 (Mich. 2005)), or when a defendant's conduct constitutes "fraudulent concealment," *Aslani v. Sparrow Health Sys.*, No. 1:08-cv-298, 2009 WL 736654, at *10 (W.D. Mich. Mar. 12, 2009) (citing *Devillers*, 702 N.W.2d at 558-59); *see also Aslani*, 2009 WL 736654, at *11 ("Mich. Comp. Laws § 600.5855 tolls a limitation period where 'a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to

sue on the claim,' but 'plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment.'").

Here, there was uncertainty over the constitutionality of Plaintiff's arrest and conviction, but not over the state of the law as to the length of the applicable statute of limitations or when the statute of limitations began to run.  Further, Plaintiff has alleged only that "the individuals responsible for maintaining the SOR and local law enforcement failed to notify [Plaintiff] of his rights under *Doe* with reckless disregard for the consequences."  (*See* Compl. ¶¶ 39, 62.)  He does not allege that Defendants fraudulently concealed the existence of his claim.  Indeed, they could not have done so because the asserted basis for Plaintiff's discovery of his injury is the 2020 court opinion in *Does III*.  But all court opinions are part of the public record.  Defendants could not conceal that decision from Plaintiff (or any other court decision), and they were not obligated to keep him informed of legal developments.

Accordingly, the Court discerns no basis for granting equitable tolling under the facts of this case.  Because Defendants have shown that Plaintiff's claim is time-barred, the Court will dismiss Count I.

## 2.  <u>Count II – Malicious Prosecution (Individual Defendants and Watch Systems)</u>

Plaintiff asserts that the Individual Defendants and Watch Systems violated his Fourth Amendment right to be free from malicious prosecution.  They respond that Plaintiff has failed to state a plausible claim for relief and/or that they are entitled to immunity.

### a.    *Individual Defendants*

Under § 1983, a plaintiff may bring "a cause of action against any person who, under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution and federal law."  *Amis v. Twardesky*, 637 F. App'x 859, 860-61 (6th Cir. 2015).  At the motion

to dismiss stage, "'[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Put differently, a defendant is "entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Id.* (citation omitted). Courts have discretion to decide the order in which to evaluate the two prongs of the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "If one is lacking, [the court] need not address the other." *Crawford*, 15 F.4th at 760.

The Court will address the clearly established prong first. The Supreme Court has continuously reiterated "the longstanding principle that clearly established law should not be defined at a high level of generality." *White v. Pauly*, 580 U.S. 73 (2017) (internal quotations marks omitted); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (same).  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted.").  "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015).  "Such 'decisions must both [1] point unmistakably to the unconstitutionality of the conduct complained of and [2] be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable official that his conduct, if challenged on constitutional grounds, would be found wanting.'" *Does*

*v. Whitmer*, No. 21-11903, 2022 WL 4110150, at *10 (E.D. Mich. Sept. 8, 2022) (quoting *Barber v. Miller*, 809 F.3d 840, 846-47 (6th Cir. 2015)).

Further, the Sixth Circuit has emphasized that "'[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply' and that 'the legal principle [must] clearly prohibit the officer's conduct in the particular circumstances before him.'" *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 641 (6th Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 585-86 (2018)).  This inquiry must "be undertaken in light of the specific context of the case, not as a broad general proposition." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Saucier*, 533 U.S. at 194).  "Although a defendant ordinarily bears the burden of proof for an affirmative defense, a plaintiff bears the burden of overcoming qualified immunity." *Crawford*, 15 F.4th at 760.

Plaintiff argues that, following the Sixth Circuit's decision in *Does II* on August 25, 2016, the law was sufficiently clear that every reasonable official would understand that enforcing the SORA's amendments to those convicted before 2006 or 2011 would be unconstitutional.  Plaintiff argues that the holdings of the federal district court in *Does I* and the Sixth Circuit in *Does II* demonstrate that Plaintiff's right not to report under the SORA was clearly established prior to his arrest and conviction, and that a reasonable official, including each of the Individual Defendants, would have been aware of this fact.  Plaintiff's arguments lack merit.

Plaintiff was arrested and convicted under Mich. Comp. Laws § 28.725(1)(f).  At the time of his arrest in 2017, the district court in *Does I* and the Court of Appeals in *Does II* were the only courts that had held that the requirement in § 28.725(1)(f) to report internet identifiers was unconstitutional.  Yet they relied on different grounds for doing so.  In *Does I*, the district court concluded that this provision violated the First Amendment; it did not address the ex post facto

18

issue.  In contrast, in *Does II*, the Court of Appeals held that this provision violated the Ex Post

Facto Clause; it did not address the First Amendment issue.  To the extent Plaintiff relies on *Does I*,

a single decision from a federal district court does not clearly establish the law.  *See Doe v.*

*Whitmer*, No. 21-11903, 2022 WL 4110150, at *10 (E.D. Mich. Sept. 8, 2022) ("A single district

court opinion is not enough to pronounce a right is clearly established for purposes of qualified

immunity.") (citing *Hall v. Sweet*, 666 F. App'x 469, 481 (6th Cir. 2016)); *see also Camreta v.*

*Greene*, 563 U.S. 692, 709 n.7 (2011) ("Many Courts of Appeals . . . decline to consider district

court precedent when determining if constitutional rights are clearly established for purposes of

qualified immunity.").  A district court opinion "may be persuasive . . . but it is not controlling on

its own."  *Id.*  That is especially true here, where the Sixth Circuit reversed the district court's

decision before Plaintiff's arrest.

      To the extent Plaintiff relies on *Does II*, that case did not clearly establish that the

amendments to the SORA were unconstitutional when applied to Plaintiff.  Michigan courts had

repeatedly rejected such claims, and they were not bound by the Sixth Circuit's decision.  *See*

*Betts*, 968 N.W.2d at 541.  At the time of *Does II*, no Michigan state court had held that enforcing

Mich. Comp. Laws § 28.725(1)(f) was unconstitutional.  And even after *Does II*, the Michigan

Court of Appeals disagreed with the Sixth Circuit's decision.  For instance, in *People v. Patton*,

925 N.W.2d 901 (Mich. Ct. App. 2018), the Michigan Court of Appeals discussed *Does II* but held

that the reporting requirements in Mich. Comp. Laws § 28.727(1)(h) and (i) regarding telephone

numbers and e-mail addresses were not unconstitutional when applied retroactively because they

furthered a "civil regulatory scheme" and were not punitive.  *Patton*, 925 N.W.2d at 914.  The

Michigan Court of Appeals reached the same result in *People v. Nolan*, No. 336848, 2018 WL

5275526 (Mich. Ct. App. Oct. 16, 2018), when examining § 28.725(1)(f), the provision used to

convict Plaintiff.  *See Nolan*, 2018 WL 5275526, at *7 ("Defendant's reliance on [*Does II*] is misplaced because decisions of lower federal courts are not precedentially binding, and the analysis set forth [in *Does II*] is directly contradicted by published caselaw from this state concluding that SORA's requirements do not constitute punishment.") (citation omitted).  If it was clearly established in 2017 or 2018 that applying Mich. Comp. Laws § 28.725(1)(f) retroactively was unconstitutional, the Michigan Court of Appeals would not have rejected such claims in *Patton* and *Nolan*.

In fact, the Michigan Supreme Court did not resolve the split between state and federal precedent until it issued its opinion in *Betts* on July 27, 2021.  There, the court overruled the prior decisions from the Michigan Court of Appeals rejecting ex post facto challenges.  When doing so, it examined the issue anew because it was not bound by the Sixth Circuit's decision in *Does II*.  *See Betts*, 968 N.W.2d at 504.  Thus, it could have decided the matter differently, as the Michigan Court of Appeals did before and after *Does II*.

For the foregoing reasons, the cases cited by Plaintiff do not support his argument it was clearly established that the SORA did not apply to him.  Neither *Does I*, *Does II*, nor *Sollowoy* "point[ed] unmistakably to the unconstitutionality of the conduct complained of" or were "so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable official that his conduct, if challenged on constitutional grounds, would be found wanting." *Barber v. Miller*, 809 F.3d 840, 846-47 (6th Cir. 2015).  To the contrary, because the state and federal courts disagreed about the constitutional validity of applying the SORA amendments retroactively, it was not clearly established in 2017 or 2018 that prosecuting or convicting Plaintiff would violate his constitutional rights.

The Court acknowledges that one court has held otherwise.  In *Doe v. Whitmer*, the district court for the Eastern District of Michigan concluded that *Does II* clearly established that retroactive application of the 2006 and 2011 amendments to the SORA violated the Ex Post Facto Clause of the U.S. Constitution.  *See Whitmer*, 2022 WL 4110150, at *11-12.  That decision is not persuasive.  There, the court reasoned that the *unpublished* opinion from the Michigan Court of Appeals in *People v. Snyder* was not an "authority equal to the Sixth Circuit's" and that the defendants "could not disregard the clear command of the Sixth Circuit in 2016."  *Id.*  But the court did not consider the *published* decisions from the Michigan Court of Appeals (*e.g., Tucker*, *Temelkoski*) that had concluded that retroactive application of the SORA was *not* an ex post facto violation because that statute, as amended, did not amount to punishment.  Nor did the court consider the Michigan Court of Appeals decisions from 2018 that disagreed with the Sixth Circuit's decision in *Does II*.  In other words, at the time of Plaintiff's arrest and conviction, *Does II* was an outlier that conflicted with established Michigan precedent.  And like the Michigan Court of Appeals judges in *Patton* and *Nolan*, Defendants could have reasonably concluded that an ex post facto challenge to the SORA was meritless and that the statute was still enforceable.  "[Q]ualified immunity protects officers who 'reasonably pick[] one side or the other' in a debate where judges could 'reasonably disagree.'"  *Novak v. City of Parma*, 33 F.4th 296, 305 (6th Cir. 2022) (quoting *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 443 (6th Cir. 2016)).  Accordingly, the Individual Defendants are entitled to dismissal of Count II on the basis of qualified immunity.

### b.    *Watch Systems*

Plaintiff does not state a malicious prosecution claim against Watch Systems because he does not allege that it participated in any meaningful way in Plaintiff's prosecution.  It maintained a database of information.  It did not "ma[k]e, influence[], or participate[] in the decision to

prosecute," which is a necessary element of a malicious prosecution claim under the Fourth Amendment. *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). Plaintiff makes the conclusory assertion that the Individuals Defendants *and* Watch Systems "initiated" Plaintiff's prosecution "through the use of falsehood." (Compl. ¶ 81.) Those allegations are not sufficient to state a claim against Watch Systems.

Plaintiff compares Watch Systems to the officer in *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), who participated in a prosecution by making false statements to a prosecutor. *Id.* at 316-17. But unlike that officer, Watch Systems maintained a database of information about sex offenders generally. It did not take any action in Plaintiff's particular case. Instead, others allegedly used information in Watch Systems's database to pursue the prosecution of Plaintiff. Watch Systems is not liable under these circumstances. *See Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (noting that a malicious prosecution claim requires "an element or blameworthiness or culpability"—participation must amount to "aiding the decision in more than a passive or neutral way").

Indeed, the crux of Plaintiff's claim against Watch Systems is that it failed to update the SOR database to reflect that Plaintiff was not required to report under the SORA. In other words, in Plaintiff's view, Watch Systems should have kept track of court decisions like those in *Does I* and *Does II* and then changed its database to reflect that individuals who committed crimes before 2006 or 2011 were not required to comply with certain aspects of the SORA. That sort of claim sounds in negligence and does not give rise to liability under § 1983. *See Lewellen v. Metro. Govt. of Nashville & Davidson Cnty.*, 34 F.3d 345, 351 (6th Cir. 1994) (noting that "[g]ross negligence is not actionable under § 1983"); *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014)

("[N]egligence or perhaps a lack of attention to detail ... does not amount to malicious prosecution.").

Accordingly, the Court will dismiss Count II against Watch Systems for failure to state a claim.

**3.**   **Count III – *Monell* Liability (Chippewa County and Watch Systems)**

Chippewa County and Watch Systems argue that Plaintiff has failed to state a plausible *Monell* claim against them.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  To state such a claim, Plaintiff must "identify [a] custom, policy or practice of Defendant, connect that policy to the Defendant and show it caused a constitutional violation."  *Jordan v. City of Det.*, 557 F. App'x 450, 457 (6th Cir. 2014).

    *a.*    *Chippewa County*

Plaintiff does not identify a specific policy or custom of Chippewa County.  Generally, a plaintiff can meet this requirement "through reference to: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."  *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016).  But Plaintiff does not allege either an official policy or actions taken by officials with final decision-making authority.   Nor does he adequately allege a failure to train or deliberate indifference to federal rights violations, as he has not pled "'(1) a clear and persistent pattern of illegal activity, (2) which the [county] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [county's] custom caused the deprivation of [his] constitutional rights.'"  *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 767 (6th Cir. 2020) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016)).

Plaintiff apparently rests his claim on a failure to train.  (*See* Pl.'s Resp. 13-14, ECF No. 33.)  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  The facts supporting a claim for a failure to train must rise to the level of "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  *Id*. (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Id.* at 62 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 409 (1997)).  Here, Plaintiff alleges facts about his own case; he does not allege a pattern of constitutional violations from which to infer deliberate indifference by the county.

It is true that Plaintiff can establish *Monell* liability where there was only a single violation of federal rights, but to do so, Plaintiff must show that the county "'failed to train its employees to handle recurring situations presenting an obvious potential' for a constitutional violation." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738-39 (6th Cir. 2015) (quoting *Brown*, 520 U.S. at 409). "'[O]bvious potential for such a violation' has two elements: It must be obvious that the failure to train will lead to certain conduct, *and* it must be obvious (*i.e.*, clearly established) that the conduct will violate constitutional rights."  *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017).  Plaintiff cannot meet this standard.  As discussed above, it was not clearly established in 2017 or 2018 that applying the SORA's reporting requirements to Plaintiff would violate his constitutional rights.

For all the foregoing reasons, Plaintiff does not state a *Monell* claim against Chippewa County.  Accordingly, the Court will dismiss that claim.

### b.    *Watch Systems*

Watch Systems argues that Plaintiff's *Monell* claim against it should be dismissed because Plaintiff may only bring a § 1983 against those "acting under the color of [state law]." 42 U.S.C. § 1983.  Watch Systems contends that because it is not a governmental entity, it was not acting under color of state law.

A defendant is deemed to act under the color of state law when that defendant exercises power "'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Cox ex rel. Dermitt v. Liberty Healthcare Corp.*, 622 F. Supp. 2d 487, 491 (E.D. Ky. 2008) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Although §1983 does not protect against actions by private entities like Watch Systems, courts can find that such entities engage in state action if their conduct is "fairly attributable to the State." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000).

The Sixth Circuit has applied three tests to determine whether a private actor-defendant's conduct amounts to state action: "'(1) the public-function test, (2) the state-compulsion test, and (3) the symbiotic relationship or nexus test.'"  *Boykin v. Van Buren Twp.*, 479 F.3d 444, 451 (6th Cir. 2007) (quoting *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003)).

Plaintiff's allegations do not satisfy any of these tests.  First, under the public-function test, "state action [is] present in the exercise by a private entity of powers traditionally exclusively reserved to the State" or powers "traditionally associated with sovereignty[.]" *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352-53 (1974).  Typically, this test is interpreted narrowly and finds state action on the part of a private actor only in rare circumstances.  *Cox,* 622 F. Supp. 2d at 492. Here, Watch Systems was a private technology company under contract with the State, operating

and maintaining a database about sex offenders.  This is not a task that is traditionally associated with sovereignty or that is exclusively reserved to the state.

The state compulsion test "requires that the state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Id.* at 493.  As Watch Systems argues, Plaintiff has not alleged facts indicating that Watch Systems was coerced or encouraged by the state into committing any conduct, or that it was acting pursuant to any state coercion.  Instead, Watch Systems was under a contract and was being paid by the state.  (*See* Compl. ¶¶ 22-23.)  Thus, Plaintiff's allegations fail this test.

Third, under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the latter may be fairly treated as the state itself." *Cox*, 622 F. Supp. 2d at 493 (quotation and citation omitted).  "[A]cts of private contractors do not become the acts of the government by reason of their significant or even total engagement in performing public contracts." *Hamilton v. Moran*, No. 19-11572, 2021 WL 364251, at *7 (E.D. Mich. Feb. 3, 2021) (citing and quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992)).  Here, Plaintiff does not allege that Watch Systems "played a role" in the allegedly unconstitutional conduct by government officials. *See Wolotsky*, 960 F.2d at 1336 (concluding that a contractor was not liable for terminating the plaintiff because its contract did not play a role in the termination decision).

Plaintiff's reliance on *Cahoo v. SAS Institute Inc.*, 322 F. Supp. 3d 772 (E.D. Mich. 2018) is misplaced. The technology provided by the contractor in that case was an automated system implemented by Michigan's Unemployment Insurance Agency to "detect and punish individuals who submitted fraudulent insurance claims." *Id.* at 784.  Among other things, the system assessed

penalties and forfeitures and failed to allow administrative appeals in many cases.  *Id.*  In other words, the contractor's system was directly involved in the administration of unemployment benefits, which is a power "traditionally exclusively reserved to the State."  *Id.* at 793.  In contrast, the database here maintained information about sex offenders for the MSP.  The maintenance of such information is not like the role played by the contractor in *Cahoo*.

Furthermore, as discussed above, Plaintiff's claim against Watch Systems sounds in negligence, which does not give rise to a claim under § 1983.  *See Brown*, 520 U.S. at 407 ("A showing of simple or even heightened negligence will not suffice [to demonstrate a *Monell* claim].").

Accordingly, the Court will dismiss Count III.

### 4. Counts IV and V – State Law Claims (Watch Systems and Charles Malette)

Because the Court will dismiss Plaintiff's federal claims, the Court declines to exercise jurisdiction over Plaintiff's state law claims.  "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007).  "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues."  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).  At this early stage of the proceedings, the interests of judicial economy and the avoidance of multiplicity of litigation do not outweigh concerns over deciding state law issues.  Therefore, the Court will dismiss the state law claims without prejudice.

### 5. Motion for Leave to Amend the Complaint

Plaintiff seeks leave to amend his complaint.  Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2);

*see Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (Rule 15 promotes a "liberal policy of permitting amendments to ensure the determination of claims on their merits.").  A "district court may weigh the following factors when considering a motion to amend: undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party."  *Knight Cap. Partners Corp. v. Henkel AG & Co.*, 930 F.3d 775, 786 (6th Cir. 2019).  Futility of amendment exists where "the pleading as amended could not withstand a motion to dismiss."  *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (internal quotation marks omitted).

Plaintiff contends that he seeks to add new facts "to support the application of the discovery rule" and a new claim asserting a violation of the Ex Post Facto Clause of the U.S. Constitution. (Pl.'s Mot. for Leave to Am. Compl. 2, ECF No. 46.)  Plaintiff's new facts allege that he was not aware before March 18, 2021, that Defendants had violated his civil rights.  (Proposed Am. Compl. ¶ 75, ECF No. 46-1.)  He also alleges that the Individual Defendants "fraudulently concealed the fact that the statute [Plaintiff] was charged with and convicted of did not apply to him and was an unenforceable *ex post facto* law."  (*Id.* ¶ 76.)  He contends that his rights were "clearly established" by the *Does II* decision.  (*Id.* ¶ 130.)  He alleges that the Individual Defendants "affirmatively misled" Plaintiff and his defense attorney "about the applicability of the 2011 amendment."  (*Id.* ¶ 78.)

Plaintiff's new allegations suggesting that the Individual Defendants affirmatively misled him are conclusory.  They contain no facts about what Defendants said to him.  And Plaintiff's contention that Defendants fraudulently concealed the fact that the SORA did not apply to him is untenable, for reasons discussed above.  Defendants could not have concealed the legal status of

Plaintiff's conviction.  Thus, Plaintiff's new allegations would not save from dismissal any claims that are untimely.

Furthermore, Plaintiff's newly added claim against the Individual Defendants regarding an ex post facto violation would not survive a motion to dismiss because those defendants are entitled to qualified immunity for that claim for the same reasons that they are entitled to qualified immunity for Plaintiff's malicious prosecution claim.[5]  At the time of Plaintiff's arrest and conviction, the law was not clearly established that applying the SORA to Plaintiff would violate the Ex Post Facto Clause.  Plaintiff does not allege any conduct by the Individual Defendants after 2018.  Accordingly, they are entitled to qualified immunity.

Therefore, the Court will deny leave to amend as futile because the proposed amended complaint would not survive a motion to dismiss.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss[6] and dismiss the case.  The Court will also deny Plaintiff's motion for leave to amend his complaint because amendment would be futile.

The Court will enter an order and judgment consistent with this Opinion.


Dated: October 7, 2022            /s/ Hala Y. Jarbou
                                  HALA Y. JARBOU
                                  CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The Individual Defendants raise the defense of qualified immunity in their responses to Plaintiff's motion for leave to amend the complaint.  (*See* MDOC Defs.' Resp. 14-15, ECF No. 55; Def. Beckner's Notice, ECF No. 52; Def. Erickson's Resp. 5-6, ECF No. 53.)

[6] The Court will deny Watch Systems's second motion to dismiss as moot because it addresses only a state law claim over which the Court declines to exercise jurisdiction.